**Denise Marie BAKER, Appellant,**

**v.**

**STATE of Minnesota, Respondent.**

No. C4–98–1090.

Supreme Court of Minnesota.

March 11, 1999.

Amended on Grant of Rehearing
March 11, 1999.

Laura A. Zimm, Duluth, for appellant.

M. Hatch, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., Tisha R. Tallman, Asst. County Atty., Duluth, for respondent.

## OPINION

BLATZ, Chief Justice.

Appellant Denise Marie Baker contends that the enhanced gross misdemeanor DWI statutes' two-year sentencing provisions, Minn.Stat. § 169.121, subd. 3(d), and Minn. Stat. § 169.129, subd. 2(b), and the amended definition of felony, Minn.Stat. § 609.02, subd. 2, are unconstitutional because they permit local imprisonment for a period exceeding one year without a twelve-person jury. We conclude that the enhanced gross misdemeanor sentencing statutes and the statute amending the definition of felony are unconstitutional and remand the case to district court for trial on the remaining charges.

The facts of this case are not at issue. On February 17, 1998, appellant Denise Marie Baker was charged with four crimes includ-ing Enhanced Aggravated DWI under Minn. Stat. § 169.129, subd. 1 and Enhanced Gross Misdemeanor DWI under Minn.Stat. § 169.121, subd. 1(f). Before trial, appellant filed a motion to declare the enhanced gross misdemeanor two-year sentencing statutes and the statute amending the definition of felony unconstitutional. Appellant claimed that they contravened a 1988 constitutional amendment guaranteeing twelve-person juries to people accused of felonies. She subsequently moved the district court to impanel a twelve-person jury. The district court upheld the constitutionality of the enhanced gross misdemeanor sentencing statutes and denied appellant's motion for a twelve-person jury.

Appellant sought pretrial discretionary review by the court of appeals. The court of appeals denied review, but this court granted expedited review.

The legislature created a category of crimes named enhanced gross misdemeanors in 1997. Although not limited by statute, enhanced gross misdemeanors currently appear only in DWI laws. To allow enhanced gross misdemeanors' two-year incarceration sentences without identifying them as felonies, the legislature amended the definition of felony to constitute "a crime, other than an enhanced gross misdemeanor, for which a sentence of imprisonment for more than one year may be imposed."[1] Prior to 1997, the statute defined a felony as "a crime for which a sentence of imprisonment for more than one year may be imposed."[2]

The first challenged enhanced gross misdemeanor sentencing statute, Minn.Stat. § 169.121, subd. 3(d), addresses penalties for offenders with prior impaired driving convictions or prior license revocations. It lays out the grounds for conviction of an enhanced gross misdemeanor and then states "[a] person convicted of an enhanced gross misdemeanor under this paragraph may be sentenced to imprisonment in a local correctional facility for not more than two years or to payment of a fine of not more than $3,000, or both."

1. Minn.Stat. § 609.02, subd. 2 (Supp.1997).

2. Minn.Stat. § 609, subd. 2 (1996).

The second challenged enhanced gross misdemeanor sentencing statute, Minn.Stat. § 169.129, subd. 2(b), addresses penalties for DWI violations when the offender's driver's license has already been cancelled or suspended. It similarly permits sentences of "imprisonment in a local correctional facility for not more than two years or to payment of a fine of not more than $3,000, or both."

## I.

■ We first address appellant's contention that the amended definition of felony violates the state constitution by allowing misdemeanor crimes to be punished by imprisonment in excess of one year without a trial before a twelve-person jury. The construction of a statute is a question of law this court reviews de novo.[3] A statute will be presumed constitutional unless the party challenging the statute proves beyond a reasonable doubt that the statute is unconstitutional.[4]

Prior to 1971, all Minnesota juries consisted of twelve people. In 1971, the legislature passed Minn.Stat. § 593.01, subd. 1, providing for six-person juries in all cases except for gross misdemeanor and felony trials. Seventeen years later, when the law first faced a constitutional challenge, this court held in *State v. Hamm* that the state constitution's mandate of an "impartial jury" meant a jury of twelve people, and declared the six-person jury statute unconstitutional.[5]

Following *Hamm*, the voters of Minnesota were asked to approve a 1988 constitutional amendment allowing for less than twelve-person juries. The question posed to voters was: "Shall the Minnesota Constitution be amended to allow use of juries of less than twelve members in civil and non-felony cases?"[6] The requisite number of voters adopted the amendment. The amendment as it is codified reads in pertinent part:

In all prosecutions of crimes defined by law as felonies, the accused has the right to a jury of 12 members. In all other criminal prosecutions, the legislature may provide for the number of jurors, provided that a jury have at least six members.[7]

■ This 1988 amendment to the Constitution gave the definition of felony constitutional significance. *"Absent any constitutional definition or classification*, it is competent for the legislature, in creating or defining an offense, to name it, classify it, and prescribe the punishment for it."[8] Under *Kelly*, the legislature's power to define offenses does not give it the power to modify crime classifications in a manner which impinges on an accused's constitutional rights, including the right to a twelve-person jury. Therefore, the legislature's modification of the definition of felony unconstitutionally contravenes the right to a twelve-person jury for people accused of enhanced gross misdemeanors who face more than one year incarceration.

This ruling in no way impedes the legislature's authority to define and punish crimes. In keeping with the constitution's language, the legislature remains free to define crimes by law as felonies or misdemeanors, and so dictate the severity of punishment for committing a crime. Indeed, the legislature is free to ascribe a two-year sentence to the criminal conduct at issue in this case, so long as the legislature recognizes that in so doing it has created a felony. What the legislature may not do is create a class of crimes whose severity mandates a sentence of greater than one year's incarceration and then call those crimes misdemeanors so as to deny defendants their constitutional right to a twelve-person jury. Allowing the legislature the power to modify the definition of felony would eviscerate the 1988 constitutional amendment approved by the voters.

---

3. *Doe v. Minnesota State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989).

4. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989).

5. *State v. Hamm*, 423 N.W.2d 379, 382 (Minn. 1988).

6. 1988 Minn. Laws Chapter 716, Section 2.

7. Minn. Const. art. I, § 6.

8. *State v. Kelly*, 218 Minn. 247, 266, 15 N.W.2d 554, 564 (1944) (emphasis added).

Historical analysis reinforces our holding that felonies have long been defined as crimes that are punishable by imprisonment for greater than one year. Place of incarceration at one time influenced crime classification, but by 1905 the state sentencing scheme highlighted the importance of length of sentence in determining crime classification. By statute, when no sentences were fixed to the particular crimes, gross misdemeanors received "imprisonment in the county jail for not more than one year,"[9] and felonies received "imprisonment in the state prison or a county jail for not more than seven years."[10] In 1927, the legislature set out a minimum sentence of one year for felony convictions sentenced to imprisonment. Unlike prior definitions of felony, this definition of felony did not even state the place of imprisonment, further demonstrating the importance of sentence length in distinguishing between misdemeanors and felonies.[11] While the state has pointed to a few gross misdemeanors existing prior to the adoption of the Criminal Code which carried penalties of up to five years imprisonment in a county jail, the constitutionality of those laws was never raised before this court. Further, even if challenged, those laws would not have raised the constitutional concerns that enhanced gross misdemeanors now raise, as twelve-person juries were used for all jury trials until 1971.

In 1963, with the passage of the Criminal Code, the legislature refined the definitions of felony, misdemeanor, and gross misdemeanor. A felony was defined as a crime punishable by more than one year of imprisonment. A misdemeanor was defined as a crime punishable by a sentence of not more than 90 days, or a fine of not more than $700, or both, and a gross misdemeanor was defined as any crime which was neither a felony nor a misdemeanor.[12] These definitions of felony and misdemeanor thus created a de facto limit on gross misdemeanors.

The state argues that, historically, place of incarceration, rather than length of incarceration, has determined crime classification. However, the 1988 constitutional amendment cannot be read as the state argues without ignoring the long statutory history and legal precedent of defining felonies as crimes punishable by more than a year of incarceration. The state would have us construe the modifier "[i]n all prosecution of crimes defined by law as felonies, * * *" to confer some kind of a license on the legislature to define any crime as a felony regardless of the length of incarceration, simply by passing a "law" that defines it so.

Given the overwhelming historical precedent we have cited for definitions of felonies as crimes punishable by a sentence of more than a year, the only reasonable conclusion is that the term "crimes defined by law as felonies" refers to this historical definition of felonies and not how the legislature may define them at any given moment.

As historical analysis and constitutional interpretation demonstrate that a felony is a crime for which a sentence of imprisonment for greater than one year may be imposed, a twelve-person jury is mandated. The legislature may not impinge upon such a crucial constitutional right. Therefore, we must declare that the statute amending the definition of felony, Minn.Stat. § 609.02, subd. 2 (Supp.1997), is unconstitutional.

## II.

We now turn to the enhanced gross misdemeanor sentencing laws in light of our ruling that the statute amending the definition of felony is unconstitutional.

The Minnesota Constitution guarantees the right to a twelve-person jury only to those accused of felonies. The enhanced gross misdemeanor sentencing requirements and the amended definition of felony work together to deprive people accused of crimes that carry a maximum sentence of up to two years incarceration their constitutional right to a twelve-person jury. Although the burden of proof for showing that a statute is

---

9. Minn.Stat. § 4764 (1905).

10. *Id.* § 4762 (1905).

11. Minn.Stat. § 610.17 (1941).

12. Minn.Stat. § 609.02, subds. 2–4 (1963).

unconstitutional is high,[13] a twelve-person jury requirement cannot be grafted onto the enhanced gross misdemeanor statutes. The voters did not constitutionally guarantee a defendant accused of a crime other than a felony the right to a twelve-person jury. In upholding the enhanced gross misdemeanor sentencing laws by reading such a requirement into them, the court would be stating in essence that enhanced gross misdemeanors are felonies as only individuals accused of felonies have a constitutional right to a twelve-person jury. We decline to ignore the legislature's clear language, by which it has labeled these crimes enhanced gross misdemeanors, in order to uphold the statutes.[14]

In *Kelly* we pointed out that "[s]tatutory nomenclature does not necessarily determine the grade or class of a crime. Calling an offense a misdemeanor does not make it so when the punishment prescribed makes it a gross misdemeanor or felony."[15] The state urges us to upgrade enhanced gross misdemeanors to felonies, as the court in *Kelly* upgraded crimes titled misdemeanors to gross misdemeanors. However, the state's argument is not persuasive as Kelly did not address constitutional concerns. Although the defendant in *Kelly* contested his sentence, the constitutional protections remained the same at his trial whether he was charged with a misdemeanor or a gross misdemeanor. We are constrained by the constitutional protections, adopted by the voters in 1988, that now attach to crime classifications. Accordingly, we must declare unconstitutional the enhanced gross misdemeanor sentencing statutes, as well as the statute amending the definition of felony.

## III.

 Finally, the state requests that our decision be applied prospectively. Generally, court rulings are given retroactive effect.[16] However, we have given our rulings prospective effect in a number of criminal cases.

For example, in *State v. Hamm*,[17] we held a law allowing six-person juries for misdemeanor cases unconstitutional and gave the ruling prospective effect.[18] *Hamm* reasoned that defendants may waive their constitutional rights, and therefore defendants who had not challenged their six-person juries had waived their objections to six-person juries.[19]

■ Our analysis of the enhanced gross misdemeanor statutes closely tracks *Hamm's* reasoning. We have ruled the enhanced gross misdemeanor statutes unconstitutional because they deny twelve-person juries to defendants accused of crimes for which twelve-person juries are mandated. Defendants already tried under the enhanced gross misdemeanor statutes who did not contest the constitutionality of the statutes have waived their objections.[20] Our decision shall apply prospectively to currently pending cases brought under the enhanced gross misdemeanor statutes in which the constitutionality of the statutes has been challenged.

The decision of the trial court is reversed and this case is remanded for further proceedings in accordance with this ruling.

Reversed and remanded.

---

13. *In re Haggerty*, 448 N.W.2d at 364.

14. *Cf. State ex. rel. Graham v. Klumpp*, 536 N.W.2d 613, 615 (Minn.1995) (in interpreting ambiguous statutes, courts must attempt to "ascertain and effectuate the intention of the legislature").

15. *Kelly*, 218 Minn. at 266, 15 N.W.2d at 564.

16. *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn. 1982).

17. 423 N.W.2d 379 (Minn.1988).

18. *Id.* at 386.

19. *Id.; see also Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183, 187 (Minn.1994) (limiting retroactive application of decision holding sobriety checkpoint roadblocks unconstitutional to cases pending on date of decision in which challenge to checkpoints properly raised); *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 837–38 (Minn.1991) (prospectively applying decision ruling statute unconstitutional to the extent that statute denied motorists the right to consult with an attorney before deciding whether to submit to blood alcohol testing); *McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 853 (Minn.1991) (companion case to *Friedman*).

20. *Cf. Hamm*, 423 N.W.2d at 386.